IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-673-FL

| KRISTY HOWELL, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff/Claimant, | ) |  |
|  | ) | **MEMORANDUM AND** |
|  | ) | **RECOMMENDATION** |
| v. | ) |  |
|  | ) |  |
| MICHAEL J. ASTRUE, Commissioner of | ) |  |
| Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-21, DE-26] pursuant to Fed. R. Civ. P. 12(c). Claimant Kristy Howell[1] ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Supplemental Security Income ("SSI") payments.[2] The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the

---

[1] Claimant is identified as Kristy Howell in the pleadings, but the administrative record identifies Claimant as Kristy Alison Howell.

[2] Claimant initially filed for both disability insurance benefits ("DIB") and SSI. Claimant subsequently amended her alleged onset date to be February 25, 2009. (R. 217). Claimant's last insured date for DIB was December 31, 2004. (R. 15). The Administrative Law Judge ("ALJ") treated the changed onset date as a dismissal of Claimant's DIB application and Claimant has not appealed this determination. *See* Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-22] at 1 n.1; Def.'s Mem. Supp. Def.'s Mot. J. Pleadings ("Def.'s Mem.") [DE-27] at 2 n.1. Thus, this court only addresses Claimant's SSI claim. (R. 15, 26).

Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on February 25, 2009, alleging disability beginning May 17, 2003. (R. 15). Both claims were denied initially and upon reconsideration. (R. 15). A hearing before the ALJ was held on August 24, 2010, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 15). At the hearing, the Claimant amended her alleged onset date of disability to reflect February 25, 2009. (R. 15, 217). The ALJ treated the amended onset date as a motion to dismiss Claimant's DIB claim because Claimant did not allege disability until a date after her last insured date. (R. 15). On September 16, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 15-26). On September 23, 2011, the Appeals Council denied Claimant's request for review, recognizing that the ALJ properly dismissed the DIB portion of Claimant's claim following the amended alleged onset date. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision. [DE-3].

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d

2

640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies

3

four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's credibility; (2) improper assessment of medication side effects in formulating Claimant's RFC; and (3) improper assessment of Claimant's subjective complaints of pain.[3] Pl.'s Mem. at 2, 5-10.

## FACTUAL HISTORY

### I.  ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 17). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, carpal tunnel syndrome, fibromyalgia, and obesity. (R. 18). The ALJ also found Claimant had nonsevere impairments of diabetes, hypertension, depression and anxiety. (R. 19). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's

---

[3] Claimant identifies three assignments of error, however, the court considers issues one and three together as they relate to credibility.

4

mental impairments have resulted in no limitation in her activities of daily living, no limitation in social functioning and mild limitation in concentration, persistence and pace with no episodes of decompensation. (R. 19).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[4] requiring a sit/stand at will option, handle and finger no more than frequently, kneel and crawl frequently, balance, stoop, and crouch occasionally, no climbing, no overhead reaching with upper left extremity, and no work at heights or around dangerous machinery. (R. 20). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 21-25). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a childcare provider. (R. 24). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 24-25).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 34 years old and unemployed. (R. 33). Claimant is a high school graduate and was last employed with a fast-food restaurant for approximately two years ending in 2003, where her duties included cooking. (R. 33, 35). Since

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

5

2003, Claimant's past work experience has included working at other restaurants, but only for short periods of time, usually not more than two months. (R. 35-36). Claimant also worked at a pharmacy and at a child daycare center prior to 2001. (R. 36).

Claimant explained numerous medical conditions support her disability claim and her inability to work full-time. These medical conditions include a fractured humerus clavicle and ankle resulting from a car accident in 1998, diabetes, swelling in her feet, carpal tunnel syndrome, pain and weakness in her left arm, pain in her neck and shoulder, numbness in her hands, degenerative disc disease in lower back, and fibromyalgia. (R. 34, 35, 36, 37, 38, 39, 41, 45). Claimant testified to being in a car accident in 1998 and having surgery on her humerus clavicle and left ankle following the accident. (R. 34). Claimant next testified to having disc fusion surgery in 2004 at the C5-6 location in her neck. (R. 34). Claimant testified to also having a cyst removed from her right wrist in 2004. (R. 34). Next, Claimant testified to having gall bladder surgery in 2006. (R. 35). Claimant testified that in January 2009 she fell down the steps on ice while walking out of her house. (R. 37). Finally, Claimant testified to having a second disc fusion surgery in 2009 at the C3-7 location in her neck. (R. 35, 38).

Claimant testified that she is unable to work due to pain and that she has had pain in her left arm since her 1998 car accident. (R. 37). Claimant testified she also has limited movement and weakness in her left arm. (R. 37). Claimant testified she has had pain in her neck, arms, and hands since her 2003 accident and that her condition worsened when she fell in 2009. (R. 37). Claimant testified she was diagnosed with carpal tunnel syndrome and had a nerve release performed on both hands. (R. 38). Claimant testified she has been diagnosed with degenerative disc disease and experiences pain in her neck, shoulders, and low back, and she has pain everyday throughout her

6

body. (R. 39, 40). Claimant testified that the pain is worse in her back and neck depending on the amount of walking or her movements. (R. 40). Claimant described the pain as a burning sensation and testified she takes medication daily to relieve pain and has received steroid treatments. (R. 39, 40). Claimant testified her fibromyalgia causes her pain and makes her tired. (R. 45). Claimant testified she takes Lyrica for her fibromyalgia, but that it makes her confused and dizzy. (R. 39). Claimant testified her fibromyalgia is exacerbated by stress. (R. 46).

Claimant testified she gets her son ready for school and takes him to the bus stop. (R. 40). Claimant testified she then returns home, checks her blood sugar, prepares a meal, takes her medication and goes back to sleep. (R. 40). Claimant testified she spends about 85 percent of the day asleep or lying down and that she moves between the bed, recliner, floor and couch when trying to get comfortable lying down. (R. 40). Claimant stated she has a lot of swelling in her legs from fluid and takes medication to help alleviate the swelling. (R. 41). Claimant testified she weighs 200 pounds and does not drive. (R. 41, 42). Claimant testified that she washes clothes once a week and vacuums using a lightweight vacuum because she cannot maneuver a heavier vacuum. (R. 43). Claimant testified she does not mop, sweep floors or clean bathrooms because she cannot bend. (R. 43).

### III. Vocational Expert's Testimony at the Administrative Hearing

Ms. Sandra Wells-Brown testified as a VE at the administrative hearing. (R. 43-49). After the VE's testimony regarding Claimant's past work experience (R. 44), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light

work with nonexertional limitations that include no more than frequent fingering and handling, no reaching overhead with the left upper extremity, occasional balancing but no climbing, occasional stooping and crouching, frequent kneeling and crawling, and no working at heights or around dangerous machinery. (R. 46, 47). The VE responded in the negative. (R. 47). The ALJ next asked if there would be other occupations the hypothetical individual could perform. (R. 47). The VE testified that jobs existed in the national and regional economies which the hypothetical individual could perform, including the following: (1) cashier (DOT #211.462-010); (2) cleaning positions (DOT #323.687-014); and (3) cafeteria attendant (DOT #311.677-010). (R. 47). Second, the ALJ asked the VE if positions would be available if the hypothetical individual required a sit/stand at will option. (R. 47). The VE responded that the cashier position would still be appropriate and added the positions of assembly (DOT #723.684-018) and counter attendant (DOT #311.477-014). (R. 47). The VE confirmed that these positions would be consistent with only the frequent use of the hands. (R. 48).

When asked by Claimant's counsel if there would be work available for the hypothetical individual if such person were unable to perform even low stress jobs, the VE responded in the negative. (R. 48). The VE further testified that there would be no work for the hypothetical individual if such person were unable to sit for at least two hours a day. (R. 49). Claimant's counsel further asked if there would be work for the hypothetical individual if such person required sitting at least 50 percent of the day and elevation of their leg to a 45-degree angle to which the VE responded in the negative. (R. 49). Finally, the VE testified in the negative when asked if there would be any work available if the hypothetical individual needed to be absent from work at least four days a month. (R. 49).

8

**DISCUSSION**

**I.    The ALJ properly assessed Claimant's credibility.**

Claimant argues that the ALJ improperly evaluated her credibility. Pl.'s Mem. at 5. In particular, Claimant contends the ALJ "did not adequately address the[] factors [with Social Security Ruling 96-7p] in assessing [Claimant's] credibility" and did not properly consider Claimant's subjective complaints of pain *Id.* at 6, 8. This court disagrees.

Federal regulation, 20 C.F.R. § 416.929(a), provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under this regulation, whether a person is disabled by pain or other symptoms is a two-step process. *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* at 594; *see also* Social Security Ruling ("S.S.R.") 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The second step in the inquiry considers "all available evidence," including a claimant's statements about his pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Id.*; *see also* 20 C.F.R. § 416.929(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. Objective evidence of pain is not required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See id.* at 595-96. The ALJ is not obligated to accept the claimant's statements at face value; rather, he "must make a finding on the credibility of the

9

individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

After reviewing the ALJ's decision, this court finds the ALJ made the necessary findings in support of his credibility determination and analysis of Claimant's complaints of pain pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (recognizing an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ properly summarized Claimant's medical records as to each impairment during the relevant time period. The ALJ acknowledged that the medical evidence indicates Claimant had carpal tunnel syndrome, but that Dr. Massey, Claimant's treating physician, diagnosed the condition as mild. (R. 22, 393). The ALJ noted Claimant underwent bilateral carpal tunnel release surgeries in 2009 (R. 514), and immediately following the left release surgery, Dr. Massey indicated Claimant was doing well with regard to the left side. (R. 22, 494). Additionally, Dr. Massey continued to note that following both release surgeries, Claimant ultimately improved. (R. 22, 514). However, Dr. Massey noted that Claimant's release surgery did result in a somewhat protracted postoperative course. (R. 514).

The ALJ also noted Claimant's history of fibromyalgia. In particular, the ALJ noted Dr. Hogarty's observation that Claimant had moderately severe myofascial pain with 10/18 ACR defined tender points. (R. 22, 500). However, the ALJ also noted Ms. Smith's observation that Lyrica was working fine for the treatment of Claimant's fibromyalgia symptoms and pain medicine was working effectively for Claimant. (R. 22, 534). Additionally, physical examination treatment notes from May 2010 indicate that Claimant had full range of motion in all extremities. (R. 22, 535).

With respect to Claimant's degenerative disc disease, the ALJ acknowledged that in May

10

2009, Dr. Massey noted that Claimant was doing well following her anterior cervical disc fusion surgery in March 2009. (R. 21, 414). However, the ALJ noted that physical observation showed some restriction in range of motion in rotation of her neck to the left, but Claimant otherwise had good strength and good reflexes. (R. 21, 414). Additionally, the ALJ acknowledged that Claimant's main complaint in May 2009 was stiffness in the morning and evening, but that Dr. Massey instructed Claimant to increase her activities and continue her exercises. (R. 21, 414). Further examination indicated that later in 2009, Claimant's neck was doing well and radiography records indicated the cervical spine fusion was progressing. (R. 21, 494). Dr. Massey also noted full range of motion in Claimant's neck at this time. (R. 21, 494). Treatment notes in 2010 describe Claimant's neck as supple and diagnostic studies showed no evidence of right or left cervical radiculopathy or brachial plexopathy. (R. 21, 22, 455, 491). The ALJ further noted that evidence showed mild degenerative disc disease in Claimant's lumbar spine, but that Dr. Massey did not find any surgically correctable pathology and that Claimant had no focal neurological findings. (R. 22, 544). The ALJ noted that Claimant ambulated without difficulty and her back was not tender. (R. 22, 505, 528). Additionally, Claimant's motor skills were noted as 5/5 equal, bilateral, and symmetric and had good heel to shin movement. (R. 22, 528). Finally, the ALJ acknowledged that Dr. Massey indicated in February 2010 that Claimant was exhibiting significant Waddell signs. (R. 23, 514).

In addition to the objective medical evidence, the ALJ also considered factors set forth in 20 C.F.R. § 416.1529(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 SSR LEXIS 4, at \*18, 1996 WL 374186, at \*6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the

11

[ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). Here, the ALJ's decision cites the following evidence in evaluating the Claimant's credibility: (1) Claimant's subjective complaints of significant pain in her neck and shoulders along with other problems in her hands, feet, and legs; (2) Claimant's testimony of limited movement in her left arm, inability to raise her arm, and weakness and pain in the arm; (3) Claimant's experience of pain throughout the day; (4) Claimant's testimony that Lyrica makes her confused; (5) Claimant's testimony that she lies down about 85 percent of the day and is constantly up and down; (6) Claimant's inability to sit for long periods of time because of pain; and (7) Claimant's ability to wash clothes weekly and vacuum with a lightweight vacuum, but Claimant's inability to mop, sweep or clean bathrooms. (R. 21, 37-43).

Despite the above, Claimant contends the ALJ erroneously evaluated her assertions regarding the intensity, persistence, and limiting effects of her pain and failed to consider her efforts to relieve pain in making a credibility determination. Pl.'s Mem. at 7, 8. Although Claimant is not required to demonstrate the effects of her symptoms with objective findings, objective evidence is nevertheless a crucial evaluation tool when determining the extent to which pain impairs a claimant's ability to work. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006). The ALJ found that Claimant had a medically determinable impairment reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. (R. 21). The ALJ properly evaluated Claimant's subjective accounts of pain with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Rather than requiring objective evidence or considering only objective evidence, the ALJ simply relied on the record evidence, which notably included minimal documentation as to the limiting

effects of Claimant's impairments, to find that Claimant's testimony regarding her limitations was not fully credible. Despite Claimant's argument that the ALJ did not properly follow the analysis outlined above, the ALJ summarized at length the medical records between March 2009 and July 2010 which more than adequately recognized the Claimant's efforts to relieve her pain. For example, with respect to Claimant's physical impairments, the ALJ acknowledged Ms. Smith's opinion that Claimant is incapable of even "low stress" jobs and will need to be absent more than four days per month from work. (R. 23, 517, 519). However, as the ALJ explained, Ms. Smith's opinion as to Claimant's work ability was contradicted by Ms. Smith's findings which showed Lyrica was working well to treat Claimant's fibromyalgia, pain medications were working effectively and Claimant had full range of motion in her extremities. (R. 23, 534, 535). With respect to fibromyalgia, the ALJ acknowledged that there was indication of myofascial pain in January 2010, but also noted the effectiveness of Claimant's medication. (R. 22). Notably, Claimant's own version of the relevant facts includes minimal discussion of her treatment of fibromyalgia. *See* Pl.'s Mem. at 9-10. As for her back condition, the ALJ noted there was restricted range of motion in Claimant's neck immediately following surgery, but that full range of motion was noted a few months later in 2009. (R. 21). Additionally, the ALJ acknowledged the presence of degenerative disc disease, but noted that physical examination in 2010 revealed Claimant's back was not tender and had 5/5 motor strength bilaterally. (R. 22).

Further, it is important to note that the ALJ found several of Claimant's alleged limitations credible because he accounted for them in his RFC finding which provided for a sit/stand option, only frequent handling and fingering, and no overhead reaching with the left extremity. (R. 20). There is no requirement that an ALJ find all of Claimant's assertions credible as the ALJ's job is to

13

make credibility determinations. This inherently implies that acceptance of all of Claimant's pain allegations is not required simply because the ALJ accepts some allegations. In not finding certain pain allegations credible, the ALJ fully complied with the credibility determination requirements.

Here, Claimant has failed to carry her burden in showing an inability to perform substantial gainful activity as a result of her physical impairments. *See* 20 C.F.R. § 1512(a) ("[The claimant] must furnish medical and other evidence that we can use to reach conclusions about [the claimant's] medical impairment(s) and . . . its effect on [the claimant's] ability to work on a sustained basis."); *Aytch v. Astrue*, 686 F. Supp. 2d 590, 599 (E.D.N.C. 2010) ("[W]hen an applicant for social security benefits is represented by counsel the [ALJ] is entitled to assume that the applicant is making [her] strongest case for benefits.") (quoting *Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997)). The record contains no opinion by a treating or examining physician as to Claimant's functional limitations as a result of Claimant's physical impairments.

The ALJ properly evaluated Claimant's subjective accounts of her pain with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, the ALJ's decision that Claimant is capable of performing light exertional activities, with certain specific limitations catered to several of Claimant's pain allegations, reflects the weight and credibility he afforded Claimant's subjective statements about her pain. (R. 20). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only

14

to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## II.     The ALJ properly assessed Claimant's RFC.

Claimant contends the ALJ "failed to properly consider the side effects of [Claimant's] multiple medications on her ability to work." Pl.'s Mem. at 8. This court disagrees.

SSR 96-7p requires the ALJ to consider the side effects of any medication an individual takes to alleviate pain or other symptoms in assessing the credibility of claimant's statements about pain or other symptoms and their functional effects. S.S.R. 96-7p, 1996 SSR LEXIS 4, at *8, 1996 WL 374186, at *3. Finally, SSR 96-8p requires the ALJ consider all the evidence in the record when making a RFC determination, including the side effects of medications the claimant is taking. S.S.R. 96-8p, 1996 SSR LEXIS 5, at *13-14, 1996 WL 374184, at *5. With respect to Claimant's alleged medication side effects, the ALJ acknowledged Claimant's testimony that Lyrica makes her confused. (R. 21, 39). Claimant argues the ALJ should have considered how her complaints of fatigue to Ms. Smith in July 2010 prevents Claimant from engaging in work activity. Pl.'s Mem. at 8. However, Claimant's testimony as to the complaint of fatigue is the only evidence Claimant cites in the entire medical record as to the existence of her symptom of fatigue. Moreover, Claimant's complaint of fatigue is the only report of fatigue; it is not reported by a physician, nor is it attributable to any treatment medications. Additionally, Claimant's report of fatigue to Ms. Smith was after Claimant fainted and was reported to have had low blood sugar. (R. 528).

While the ALJ did not expressly acknowledge Claimant's testimony that she is "really sleepy" from Lyrica, the ALJ stated that the "medical evidence does not indicate medication side

15

effects that would preclude work activity." (R. 22, 45). There are no physician reports in the medical record showing Claimant's fatigue to produce additional limitations. Further, drowsiness often occurs with the taking of medication and cannot be viewed as disabling unless the record shows serious limitation resulting to the Claimant which is not present here. *See Hancock v. Astrue*, No. 1:09-CV-87, 2012 U.S. Dist. LEXIS 52697, at *27, 2012 WL 1267888, at *9 (M.D.N.C. Apr. 16, 2012) (citing *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002)). To the extent the ALJ erred in failing to explicitly mention Claimant's fatigue which appeared in only one medical record, such error is harmless. *Smith v. Astrue*, No. 1:11-CV-300, 2012 U.S. Dist. LEXIS 108760, 2012 WL 3155621 (W.D.N.C. Jun. 29, 2012) (recognizing that without an indication that medications are imposing further limitation, there is no error). Rather, Claimant erroneously implies that her side effect allegations can, standing alone, constitute conclusive evidence of disability. *See* 20 C.F.R. § 416.929 ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ."); *Mickles*, 29 F.3d at 919 ("a subjective allegation of pain, standing all alone, shall not be conclusive evidence of disability").

Based on the foregoing, this court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-21] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-26] be ALLOWED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 27th of December, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge